had an argument for the afternoon at all number 25 1816  May I please the court Robert Renner on behalf of norman Wong or what is pronounced Wong thank you I would like to reserve three minutes for rebuttal granted there are many legal issues on this appeal I would like to address two of those legal issues the first is state action the second is defamation we may have some questions about other subjects state action was addressed in the district court's ruling on summary judgment in its opinion the district court failed to discuss the facts that Dr. Wong had submitted in his opposition to the defendant's motions the district court made two major errors as a consequence of not addressing Dr. Wong's facts first the court failed to appreciate this case involves not two but five categories of retaliation Dr. Wong was removed as the director of a fellowship and was subject to attempts to ostracize him in the hopes that he would resign the district court only looked at categories one and two in its state action discussion second by implication wasn't the court conveying that I'll use the social media commentary and the Twitter postings by implication the district court was not  those accounts were not established by Pitt there's no evidence that they had any role in it the people who created them said so in their deposition that would not be correct your honor the social media harassment of my client Dr. Wong was initiated by Dr. Burlacher with the knowledge of Dr. Saba they agreed to send multiple Twitter messages regarding Dr. Wong how does that create state action having to act in coordination with Pitt for that purpose UPMC is not a state actor standing alone they said they didn't make those postings or was on an  associated with Pitt so I'm not sure why the district court erred there right but all the employees here Dr. Burlacher, Dr. Saba and the others are dual employees they act in the app of both Pitt and UPMC depending on the context well the context here that's my point you're criticizing the district court for making a mistake by not addressing the social media isn't a fair decision that because the record is we created them Pitt had nothing to do with it therefore we weren't asking with Pitt hat on ultimately the question is which hat were they wearing at the time the reason they're harassing Dr. Wong is because an academic article he published in a medical journal when Dr. Wong publishes research he's acting in his own Pitt capacity and if the other you didn't sign that he was working for Pitt in the article let's go back to the article separately you wanted to stay on state authority    under which the  were jointly undertaken by both Pitt and UPMC this includes first the relationship agreements which provide that  reserves to itself authority and  for student affairs curriculum publications research and research integrity I'm reading paragraph 3.4 of the affiliation agreement same language found in the reorganization agreement second Dr. Gladwin only had authority over Dr. Wong in the Pitt chain of command and since Dr. Gladwin was involved in the retaliation it had to be state action third that Dean Anantha Shaker was also involved in the retaliation what was the retaliatory act by Pitt through Dr. Shanker Shanker is not a party that's correct Dr.  was not named as a party so presumably you're saying that would be anything he did was on behalf of  what's the retaliatory action is it anything beyond seeking the retraction Dr.  was a signatory to the request for retraction along with six other people most of whom were affiliated Dr. Shaker was a signatory to that he appears to have been involved in that extensively he was a signatory is there some other act yes Dr. Shaker appears to have known of and approved and encouraged all the retaliation was directed at Dr. Wong we can see this in the  discussed in our brief there are a sequence of e-mails involving Dr. Shaker beginning on Thursday July 30 July 31 wasn't he responding to what he was being told by the folks at UPMC and didn't he say it was within their discretion to do what they did and he had no decision making authority over it isn't that right he did have authority because what was at issue was one of his faculty members academic research and under the agreement Dr. Wong's employment was to punish or not punish or to investigate or not investigate research misconduct and they were making allegations of research misconduct let's go into that several circuit courts including ours talked about these debates about the reliability weaknesses of academic literature in the second circuit and in each of those cases they said those sorts of debates should be decided by the academy and not litigated in the courts why does that not apply here I'm not talking about the employment discrimination claims I'm only talking about defamation we're talking about the state action issue defamation going to defamation familiar with the cases I'm speaking of I just want to make sure you're aware of these cases I'm addressing those cases in the defamation context are concerned with true scientific disputes or scientific literature like the ONY case there was a statement in that court the court shouldn't get involved in true scientific disputes because the scientific dispute could be construed as a factual assertion therefore one could claim that's defamatory and bring a defamation claim for it but it's really beyond the parameters of what defamation can cover to adjudicate the truthfulness of scientific assertions therefore there's a cautionary note in that case law that court shouldn't go down that path here we're looking at something quite different we're looking at assertions of misquotes or misrepresentations in an article which was not fundamentally scientific in nature it was a research compilation more in the field of the social sciences and the defendants here may express allegations of things of misquotes misrepresentations that stripped the paper of its scientific validity but that was their opinion that was their opinion also protected from non-actionable statements correct well as the district court correctly concluded those words are allegations of fact assertions of fact by the defendants and even if they were considered to be opinions they imply that there are non-disclosed facts supporting them but I thought they implied the only facts that are captured in those opinions is the article itself and it's 107 or 109 sources that's the basis of the opinion right the opinion the opinion offered by the declarant the word misquote for example the basis for the opinion assuming that's an  well we don't really know what the basis for the opinion is all we have is their bare assertion that there is a misquote or a misstatement which strips the paper of its scientific validity do you have any allegation that Wiley had an extreme departure from its usual standards here publication standards I didn't see it well I think this would be an extreme departure where do you plead that well the key allegation for actual malice for all the defendants would be paragraph 73 but Wiley is a publisher I want to know what in paragraph 73 bears on an extreme departure for Wiley's usual publication standards well if we have alleged actual malice that would seem to be an extreme departure from the usual publication process no I'm sorry the standard for evaluating actual malice from publisher involves whether the at least according to some case law whether the publisher departed from its usual publishing or journalistic standards the standard is different as to some of the people who are representing well you know their own opinions or something else but Wiley is just charged with you know the retraction and the retraction notice here right and in retracting his article they made statements or they repeated statements that have been made by other defendants okay so the basis of your allegation is the statement that Wiley made in connection with the retraction that is the basis of your claim against Wiley that is the defamation claim against Wiley but that is the basis for the actual malice allegation that that was an extreme departure from its normal publishing or journalistic standards it didn't do anything with regard to the retraction that it would ordinarily have done well we certainly state that this is not normal for Wiley or for the other defendants certainly not for Wiley to retract under these circumstances these are extraordinary circumstances surrounding the retraction and these defendants all right let's ask about Simon Simon is another peripheral player in here is there anything about Simon and Simon's involvement you know your your brief almost forfeits with regard to Wiley and Simon here but in terms of the defamation what is it that makes it plausible that Wiley is that Simon is guilty of defamation well the Simon article published by Wiley uses the phrase you know Dr. Wong misrepresented facts and the Simon article uses the phrase that there was a misrepresentation of evidence by Dr. Wong in his  that's the phrase that Judge Horan missed in her opinion she couldn't find it but it's there and so we have those two phrases by Dr. Simon in his  and then we refer those back to paragraph 73 of the first amendment complaint which to my mind is the key specification of the actual malice by Dr. Simon and by a number of the others and in paragraph 73 of the first amendment complaint we plead that the defendants reviewed and read plaintiff's article and that the citations and quotations were clearly attributed easily verified and correct now here it's either the defendants made a false accusation that there were misquotes and misrepresentations they did it deliberately and knowingly or they did it without checking the sources and if they did it without checking the sources then they were  recklessly they were acting in the words of I guess it's part hanky with a let me see the exact phrase the case uses in the purposeful avoidance of the truth that's communications versus content that's what we have here. But the journalists stuff the American heart association is           the   association produced two examples of how it considered the statements in the article written by the plaintiff and the statements that were in the sources relied upon how they differ kind of piggybacking off of my colleague how does that show a reckless disregard when they publish a  I didn't change the subject. I'm aware of what I'm talking about. I know the August 5th document said we're going to supplement it and then on August 6th they did. I think it's a fair reading of the complaint to take that as an integral part of this. But even so they made a point  at the age of American health and American heart and Wiley that they acted in that reckless disregard. Again they are repeating and agreeing with the statements made by the other defendants. It says the article contains many misconceptions and misquotes and together those inaccuracies and  restrict the paper. But Simon is not initiating this. Simon is just passing on the retraction statement. Journalists are allowed to do that. Does that reason not likewise suggest that Simon is not guilty of actual malice here? It's not like Simon authored this and misquotes in the first instance. Dr. Simon is a different defamatory statement. The only thing he said was misrepresent facts and misrepresentation of evidence. That article was published some days later than the actual retraction notice. Isn't it just like cutting and pasting or copying what was said in the retraction notice? Well, it's similar to what's in the retraction notice, but then the retraction notice itself is defamatory because they may be statements about misrepresentation. Right. But when someone says something defamatory, the fact that a  reports the defamatory statement doesn't make the journalist liable for the underlying defamation. Is Simon differently situated from a journalist who repeats something? The original speaker can be held liable for defamation. My question is, does Simon get liability because of what might be defamatory from the earlier speakers that he says again? The answer would be no, but I don't think that's what the Simon article does. Okay, so where in the record are you looking? I'm looking at the Simon article appendix 170. I actually strike that as the wrong page. It's page 195. So the Simon article, it says, or I'll read it, in direct contradiction to its title, the retracted article by Simon      Simon is saying that. And if I go on further in the next paragraph where it says, we also wish to  that we welcome independent viewpoints with the goal of creating open dialogue and not misrepresentation of evidence. Again, that's Simon. He's not just repeating what's in the retraction notice. He's saying it for himself. Even if he's saying it for  doesn't that further support adopting the perspectives of the other courts that have been involved in the academic debate in   I know you try to distinguish it. Well, that's hard science. This is more of a social science issue. But this is exactly what those courts were kind of looking at is there can be fair disagreement among people who are steeped in this subject area where they're going to debate the bonafides of a particular viewpoint based upon how they see the evidence.  honor, in my view, that line of reasoning does not extend to a word such as misquotes, misinterprets, scientifically invalid, especially when accompanied by But there's actually in one of the cases that I just talked    guidance on how not to super impose those other cases where in the academy there is a debate and there's colorful language used about one viewpoint versus another. And those courts have said that's not for litigation. That kind of debate. And I'm trying to understand why those cases shouldn't govern here. We would have to go through each of the six statements and parse that language carefully. Only one or two or three words are going to be representations of fact which could be actionable here. There will be other language where it won't cross that line. There's a dispute here when that becomes an opinion or issue of different scientific perspectives. But there are certain words in each of these six statements which have crossed that line into an assertion of fact. You aren't saying that any time a person accuses another person of making a misrepresentation of fact that you have all the elements you need for a defamation claim, are you? No. There would have to be some other explanation for     publication by Dr. Wong, and if he makes a misrepresentation, that certainly goes to his reputation as an academic. And here we have, of course... So, if he really did make a misrep... I'm not saying... But let's just say he said, you know what, the survey... I'm doing a survey and it had 180 people and only had 80 people. And someone wants to say, you know what, that's a misrepresentation, and they publish that. Does that mean that we're going... that we... that accusing him in another academic journal is actual malice and is serious enough that we have to send that to discovery just if it's a dispute as to whether that was accurate or not? Of course, they use misquotes as well as misrepresentation, so misquotes is better... Stronger for you. And also, if we look at, let's say, the retraction notice, it adds to,  because of this, they say they're going to retract the article, so they must think it's pretty serious. Also, in the retraction notice, they say,  the editor-in-chief deeply regrets publishing the article and offers his apologies, so they must be taking whatever that is pretty seriously if they're going to apologize and retract Dr. Wong's article because of it, and so it's not just a statement of a misrepresentation, nor is it just a statement of  If you accuse someone of misrepresentation and then you apologize that you published their work with misrepresentations and misquotes, then we've got actual malice. Or maybe you add in the phrase, and it strips the paper of its scientific validity, so here we can add more to the  We can keep adding these phrases and say, at what point does this become defamatory at least? Is it defamatory enough it can go to a jury to make a  And ultimately it should be,  for a jury to determine if this is really susceptible to a defamatory meaning, and it should be up to a jury to  ultimately, are these things true or false? I certainly don't think a   be able to  especially at the motion to dismiss day, it should be So I get several of the  I understand, is it potentially defamatory? Is it a defamatory statement? Maybe it could be, maybe it isn't. But I guess I'm most interested in just the actual malice inference from that. I mean, even just strips it of scientific meaning, maybe that's too extreme to say based on one or two identified misquotes. Is that the point? It was an overreaction? Well, they don't say how many misquotes. They don't say how many misrepresentations. They just say many. So it's almost a degree of carelessness in the sense of there might be one or two that we've seen identified. They say it's many coupled out with an apology. Sooner or later we're going to get to this very high standard of actual malice. I don't think the record shows how many alleged misquotes or misstatements there are. The only evidence of that is the revised retraction notice, which I still think we didn't plead. If I look at paragraph 39 of the California   example is supposed to be a  but there is no misquote. The second example from the California study isn't a misquote at all. There are examples in the revised retraction notice that are quite weak. Some of the examples they're going to provide imply that there are misquotes     based on errors such as these. If you're an academic like Dr. Wong and people are saying these things about your publication and then saying that justifies retraction of it, that's not very good for him. That's a problem. That's just a defamation claim. Of course, we have many other claims in this case. I see my red light is on. We're going to use that time to flourish our questions and we'll have you up on rebuttal. I'd like to ask you on the section 1983 claim against HIT under Monell. The question is about Monell.  requires a showing of a policy or custom that is violative of the Constitution. To have no liability against an entity. What is the policy or custom alleged in this complaint against HIT? Well, the policy or custom doesn't have to be enacted by a legislative body. A single action taken by an officer or official with policymaking authority can be sufficient to satisfy a   Seems like a category. The university is considered a municipality under prior case law. There's a case where Temple was a defendant. I think they used Monell. I don't know if there's a case. The university of Pittsburgh is a state actor at the municipal level. We have to assume that that's what we had approved. That arose on the motion to dismiss the third amended complaint where the district court dismissed the claim against university of Pittsburgh on the third amended complaint because we hadn't pled a policymaking decision sufficient to satisfy Monell. I don't think the court was wrong to dismiss the third amended complaint. I can go into the third amended complaint. I would like to know the case law. It's gone in and out. It hasn't been public,  public again. I'd be interested to know if the case law matches the current status of Pitt because it would be interesting to      incarnation of Pitt's articles of incorporation. To my knowledge, the university of Pittsburgh has been considered a state actor by statute since 1966. The Pennsylvania legislature basically incorporated Pitt in as a state related entity. As of 1966, there are three       I want to hear you on the case law on that. As I think of 1983, I think of claims against individuals acting under state law. At the other end of the spectrum, state claims directly against states. You can't bring claims directly against states because that's state sovereign immunity and that's not 1983. Then we've got this tweener. The tweener is municipalities. You're somewhere between individual and the whole state. I guess it's not obvious. If I had to bet, I'd say that the university of Pittsburgh is more like the state than it is the borough of  The more recent case was the one which reaffirms the prior decision saying it is a state-related institution. I'm not positive of  That issue has never been disputed before in this case that I  I think you were starting to I believe your answer was a policy maker made a decision that is sufficient. And that policy maker would be Shankar and the decision was to advocate for the retraction. Am I understanding you correctly? The third amendment complaint doesn't get into that level of specificity about retaliation. In the  third amendment. So how was he a policy maker? Your theory of liability on grounds assuming it is applicable here. He was a policy maker? Yes. We allege he is the final policy maker for this purpose. In the  we said  the case would be sufficient. I would like to turn your attention to your  1981 title 7 PHRA claim. The question I have is it focuses on the doctor's article. The article makes no mention about practices by Pitt, his colleagues. It speaks about more general practices in the field. We have a case called Curry Cramer. It rejected the second circuit's view that it is sufficient to bring a claim under those statutes. If he made no mention of that it         title 7 PHRA purposes. That's not to say you  rely on the July 31 meeting. I want to understand your position on that. I don't think it rejected the idea that a statement of  in the  can't be protected activity. It said the opposite. It said it can be. I think it said we're aware of no authority. It cited the second circuit and right below the quotation it said something along those lines. I don't recall that language. I think they cited that language from Sumner which is the second circuit decision with approval. I don't agree with you that they cited it with approval. They cited it. It's also dictum because that was not an issue. I'm aware of that. I just wanted to know the counsel's view. I agree with Judge Beebe. It is technically dicta here. It isn't controlling authority. I think it may be persuasive. The EEOC looked at the underlying Sumner decision and said we think it's correct. There's authority from the EEOC in addition to the case law in the third circuit. I want to move to the next subject. This has to do with Title 6 and the funding allegation. There's a case law out there that talks about GME programs are educational, not employment. The complaint does not allege that the primary purpose of the funding was employment. It simply said there was funding and then there was to employ the residents and the fellows, which there's other law that suggests that's all educational. So my question is what authority do you have to say this kind of funding is sufficient for a Title 6 claim? Your  I recall that the primary purpose of the  was education. I'm not sure how your allegation demonstrates that this is for employment purposes as opposed to education purposes. I want to make sure there's authority for the court to give advice. Let me finish my sentence, please. There needs to be some authority for a federal court to latch on to Title 6 and one of them is proof of the funding or the allegation to show that the  requirement is present. I didn't understand how you were making that connection when funding for residents and fellows goes to education. How    Residencies and fellowships are employment under federal law. Although it may serve a purpose of educating these  it is technically an  category. Is there a law that says that? Other laws suggest that it's not. These are really educational experiences. I believe we cited to a U.S. Supreme Court case which in the tax context considered trainees residents and fellows to be employed. But that's for tax purposes to make sure that the  is going  employment. My concern about that is a little different. I think it matters that let's say it's a primary purpose here. But        is he one of the beneficiaries of the primary purpose? Is the funding here going for supervisors of these employees as well as for the  themselves? Let's spot that they're employed.  the 2011 tax case suggests that still is he supposed to be one of the beneficiaries of that? Are the law's beneficiaries really the residents who are getting paid the  Is that enough for Title VI purposes if the money is not supposed to be  him? I think it would be, your honor. Dr. Wong is saying that these programs are engaging in race discrimination in their selection of residents. Those residents are employees. If the federal funding goes to  these people, that would seem to be sufficient for Title IX.     Some of these implied causes of action, Title IX, university of Chicago, everything that came with that. We're looking at statutory standing and saying are you in the zone of interest that was designed to be protected by this statute? Do you think that the person commenting on people receiving funding as residents and fellows is within the zone of interest that the funding is for the residents and fellows?  follow that? My answer would be sure, Dr. Wong is within the zone of  that should be       We'll have you on the boat.  Good afternoon. May it please the  My name is Ted Schroeder and I represent UPMC, UPP, and Drs. Berlocher,  and Gladwin. I'd like to focus my discussion on the state action in Title VII claims, although I'm certainly happy to answer any other questions you have about the claims against my clients. With respect to the section 1983 case, this case is controlled by this court's decision in Burrell that the district court properly found that there was no state action here. Burrell, if we can sort it out into who's wearing what's hat, we should sort it out, right? Isn't it possible that Burrell didn't have to confront the situation where two things were intertwined? Try to make it clear to me why this can be sorted out because if it can't be, shouldn't we say, well, Burrell's applicability stops at that point and they might just be   calling for the retraction and then the ball gets rolling and you wind up with people on both sides of the line wearing two hats doing stuff where we can't clearly say one or the other hat or at least we can't say it at summary judgment. Maybe a jury can later say it. I think the key to answering your question is  says about defining the nexus between the state and the specific challenge to  To answer your question, I also want to talk about what my colleagues said or what my opposing counsel said about the actions that  here. The fact is the reason judge Horan only addressed two actions is because that was all that was presented to her. If you look at paragraph 58 of the fourth amendment complaint, there are two actions attributed under the 1983 claim. The removal from the position and the contact bar. That's it. It's undisputed that those actions were carried out on behalf of UPMC. The record shows that Dr. Horan      If we bring it back to Burrell to answer your question, if you compare what happened in Burrell, the university employee actually reviewed,  and signed the termination letter, which is way more than we have here. But the decision rests with UPMC because it controls the graduate medical education program. If we want to play this trace of authority game, and I think it's a good metric to begin looking at, wasn't University of Pittsburgh in charge of all research activities? I believe that's what the affiliation agreement says, but the decision rests with  And that really, I think, just emphasizes the fact that this wasn't a decision about research, this was a decision about who gets to supervise the  medical education program. That's a UPMC program. Whatever was going on with Dr. Rong's research,  defined by that. So when anyone's looking at his research, the first moment that anybody up the chain of command from him looks at his research, they're doing that in their pit capacity. They aren't doing that in their UPMC capacity. That's pit, right? I'm not sure what you mean by look at. I guess that's the question. Here's an article by Dr. Wong. We have some concerns with it. Please take a look at it. Let's just say that. If they're looking at his research and pit has control over research and we have to pick at it and we'll assume that we have to pick. I'm not   The decision here, again, wasn't about his research. It was about his supervision of the fellowship. Based on his research, right? Based on his views. Manifested from his research that they can look at in their pit capacity. They could have, but that's not what they were doing. Maybe that's a jury question. If the question is, they have control over research, but they didn't look at this for research purposes, but purely for UPMC purposes, is that really close to a genuine dispute? I can see that one both ways. Couldn't a jury see that one both ways? Again, I don't think so. If pit had taken an action as a result of his research, that would be one thing. That's an easy case. Totally with you. I think that is a question of what decision was being made. Again, the decision was about the GME program and his role in the GME program. Pit doesn't have anything to do with that. What about the attraction statement, though? You said that if it had something to do with the research, it would be a pit act. Here we have the retraction statement. Does that provide a basis for any relief for the plaintiff? Well, I guess I'd start by again saying when you said your response to Judge Bevis' question, which is that the retraction statement was not pled or argued as a basis for the section 1983 claim.  again, the only individual defendants on the 1983 claim are  Burlacher, and Gladwin. Again, the specific conduct that they are charged with committing or allegedly committed in violation of 1983 relates to their role in the GME program. That's the UPMC program. We were talking about research and articles, and you probably heard me ask your adversary some questions about those cases that talk about the academy and the debate in the academy, and shouldn't it be left to the academy to work it out rather than bringing it to a courtroom? What is your position about that as it relates to the defamation claim? Certainly, that is our position. We did argue that position to the district court. We raised it again in our  I think cases like the ONY case in the second circuit that you mentioned stand for that proposition and that the statements related to misquotes or false interpretations are really statements of academic debate which aren't grounds for defamation claims. Certainly, that claim could also be affirmed as to doctors around the grounds which the district court ruled which was a lack of actual analysis. I asked your adversary about Kramer-Curry and its statements about how specific must the criticism be or the oppositional activity be to the current employer. Could the statements in the article by the doctor about the ACGME accreditation process which is something that PIT needs to presumably have to  Does it have to meet the accreditation requirements of ACGME? Could one infer that his comments about from his point of view the troubling requirements of the accreditor is a  about any entity including his employer who had to subscribe to them? I think the short answer is no. I don't think so. If you go back to the language of Curry-Cramer which is cited on page 62 the opposition must identify the employer and the practice. It doesn't identify a specific practice of this employer that is alleged to violate the law. On those grounds we are trying to get our arms around what is required to be pled for Title VI, whether federal funding that is directed to GMEs qualifies as  funding, and whether or not the plaintiff is in the zone of interest. What is your position concerning the applicability of Title VI here? I think we focus more on the primary purpose language in the statute because in fairness the complaint does allege that funding is used for employment but it doesn't provide any factual detail around that. It doesn't allege any facts that would support a conclusion that the primary purpose of that funding is for employment because it          there are a lot of other purposes including education and training. Any questions? You're welcome. Council for Pitt I'll let you tell us are you closer to the state? Are you in between? I want to turn to your parents council. The statute says that the university is a state related entity. That raises questions about what that means. There might be arguments that the university is an entity. We've not raised that argument here. Our opposing council and plaintiff has never contended that Monell doesn't apply. The alternative would be to treat the university like a person. The university is not like a person. It's more like a municipality than a human being walking and  It's never been treated like    try to argue instead that there was action taken by a policymaker. Under the case law, it has to have been a person with final unreviewable policymaking authority. There are no allegations that Dr. Saba who took the relevant adverse employment actions had that kind of authority. That may raise the question, what about the retraction? We have not disputed that Dean Shakar has final authority for the university. He's the one that gets the ball rolling on the  Dean Shakar signs the  so we haven't disputed that he has a role in the retraction. He did not take any of the other actions. Retraction is not enough for any of the claims for a number of reasons. First, it wasn't pled as a basis for the 1981 title 6 retaliation claims. It wasn't pled as a basis for one of the retaliatory actions. We think there are at least two reasons why those claims fail. First, a retaliatory action has to be materially adverse. It would cause a reasonable person to be dissuaded from taking protected activity. Here, simply calling for retraction on the basis of identified errors in an article is not so materially adverse that it would dissuade a reasonable person. This is just the give and take of  Second, this is itself a speech action calling for a journal to retract an article on the basis of  errors. In order for a  journal to retract an article on the basis of identified errors, it would rise to that level. I see my red light has come on. I wanted to ask you, because you are in the academic world, these other circuit courts that have relied on this perspective that the academy should debate things among themselves. Why should that apply or not apply in this scenario? The defamation claims fail for a number of reasons. First, they are purely derivative. They could only lie against the university if they were vicariously liable because the relevant actors were acting within the scope of their university employment. Here, that was not the case. I do agree,  that statements about the validity of an   where you are making an academic argument and pointing out the basis for your argument, it is very hard to see how a defamation claim can arise from that kind of a statement. Thank you,   Good afternoon, your honors. My name is Mike Barry and I represent Wiley periodicals. I would like to start with the point you raised first off. This is an academic dispute that centers on scholarship and scientific validity. Debates should be settled in scholarly discourse, not through litigation. The issue is that Dr. Wong's piece was labeled as  invalid. That is a subjective interpretation that under this court's decision, that is protected under the first amendment. Do you really think that is subjective? Absolutely. In the same way that it was with respect to the analgesics, a decision about what should be published, what is retractable, what is in the academy, the debate about what is appropriate scholarship, whether in the context of hard science or social science, the idea is to have the ultimate pursuit of  The only way that could be discussed and debated is having academic debates back and forth. It is absolutely an opinion. With respect to the     what Mr. Renner argued in this particular retraction, he said that the word misquote, misconceptions, misreadings of the sources, that is a verifiable fact. That is wrong in two ways. First, with respect to the term misquote itself, in our papers we point to the Supreme Court case law explaining that a  can be something taken out of context. It is an explanation of what something is that is a misquote. He said that is not what a misquote is. We can't even agree on what the term is. Second, how is it objectively verifiable? It is like the term liar in the case that somebody violated the law. Those things may look on their face like they are verifiable, but they are considered by the court's opinion. Here, the  Supreme   footnotes and end notes. The select audience can look at those things and verify for  is this correct or not.  Wiley says there are misquotes and misconceptions, scholars can look at that. As Judge  Wiley   misquotes and                    at those   is this correct or not.  would be happy to address the actual malice questions. With respect to actual malice, the question is what is the publisher's actual state of mind. Do they know what they are publishing is false or do they entertain doubts about the truth. With respect to actual        that UPMC and the doctors at UPMC wrote to Wiley and wrote to AHA and said there were misquotes and misrepresentations of evidence. Reliance on credible sources as is clear in this third circuit precedent is the antithesis of actual malice. In the  case, no actual malice. In the Marcon case, no actual malice. In response, Mr. Renner said they looked at the extreme departures from normal journalistic practices. The court said that's not enough. In Marcon, the third circuit, the failure in the verification process, that's not evidence of actual malice. These things don't go to whether the court   or not. I'm happy to answer any questions you all might have. Thank you. Thank you. Thank you. May it please the court, Stephen Ettinger on behalf of the American Heart Association. It's a privilege to be here before you today. From the AHA's  this is a purely academic dispute. Judge Fords, I'll preempt your question. Academic disputes about the validity of scholarly articles are poor candidates for defamation litigation. Most notably, the academic context makes a number of problems for assessing that fact and the scientific public sits as the jury and that's what should happen here.  Wang authored an article that article was criticized and the audience of cardiologists can assess that dispute. The trial court's decision should be affirmed because underlying dispute is just an exchange of opinions supported by disclosed facts. Let me see if my colleagues have any questions. Any questions? Okay. We're at this point in the afternoon and you've sat through much of it so I could be totally off base in my memory of the record but didn't your client use the phrase deliberate am I thinking of the right one? Didn't your client say deliberate misinformation? Deliberate misinformation. That's a lot different than what you would think of as deliberate  It's a little more harsh in tone. But I don't think that that changes the analysis. First I would say that it was not directed to Dr. Wang specifically. I understand the inference can be made however it was more about improving the peer review process. But even if it could refer to Dr. Wang it's still not defamatory. As written in McCaffrey verse Newsweek everyone is free to speculate about someone's motivations based on disclosed facts about the person's  Similarly in the recent opinion this court considered speculation and conjecture about plaintiff's motives and stated that these statements were still opinion statements that could not be readily verifiable. It's just you know it kind of feels like what does it belong? If the whole system is we want academic debate to get to the truth of it to get to the truth,    then you say this guy is being deliberately a bad actor. It feels like it's more ad hominem than in search of the truth. I think it's still part of that opinion paradigm that it's not a verifiable thing. So let's just do you think that if a deposition of Dr. Wong showed up and said did you do this do you believe this to be misinformation that you did deliberately? Did you deliberately misinform people? Couldn't he just say yes or no and have a jury decide is he credible when he says yes or no on that? I imagine he would say no. But I would also say that Dr. Wong's article is essentially an advocacy piece. It's not really a  article even though it's in a  journal but everything about the article is deliberate. But I just go back to... You make some factual assertions about there being many misquotations, misrepresentations, et cetera. There appear to be only two alleged ones, neither of which is strictly speaking a misquotation. Your client went beyond simply retracting the  Right. I would say that a statement is not     standards that retraction shouldn't be made silently. You could have said questions have been raised about this in abundance of caution, we retract and express no further opinion on it versus going out there and making these assertions that not just his opinion is wrong or inaccurate, and it's not an opinion based on fully disclosed facts here. On the many aspect of it, I think we focus a lot on the misquotations aspect and less about misconceptions. Okay, well you would agree even two does not count as many. I would agree. So that's factually wrong. That there were many misquotations, but I think there can still be many misconceptions. Okay, so even if there are misconceptions, they're not disclosed facts, so this isn't protected as an opinion based on fully disclosed facts. Well, I think that they disclose the role of UPMC in notifying the journal of its investigation. I think this might be a different case if you quoted and said according to the author's employer, quote, we've been notified that quote, there appear to be many misquotations, whatever, but you went more than journalist role of forwarding this and saying out of abundance misquotation of the  and that  adopted and embraced this statement as your own. But I would say that again that the  that was adopted is more in the  realm than it's not readily identifiable and that's just part of a larger academic dispute. Okay. Okay, counsel, thank you. Thank you. May I please report I represent Dr. Mark Simon. I'd like to hear what you have to say. Your friend on the other side very powerfully argued that Mr. Simon as the lead counsel of an article did more than simply forward what others had said. He embraced and adopted these statements as his own, didn't he? Well, I think what Mr. Simon did or what Dr. Simon did not only did he say that there were misrepresentations made in that article but then he cited two additional evidence that would suggest why those were misrepresentations. Okay. Is an opinion based on those facts and the question is whether that disclosure of facts takes the sting out? But he's not simply a journalist reporting on that fact. He's offering this opinion based on some  We can argue about whether they're disclosed or not. We can argue about whether they're accurate or not. Well, in his response, what Dr. Simon says is ample evidence exists to establish the benefit of diversity on health care outcomes and then he cites scholarly articles. Okay. So from his point of view, not only has he identified why this is a misrepresentation but he's cited to the sources for those. I don't know. Misrepresentation strikes me as you say that this wagon is red and then someone else says no, the wagon is not red. And that's like a misrepresentation. It's not what color the wagon should be. And if I read these two sentences here, he said there was a lot of misrepresentation and scholarship shows that the other outcome is true. But it doesn't strike me that just proving that there's another outcome means that you can say that someone did misrepresentations and not have that kind of little more ownership associated with that. Well, I do think, Judge Phipps, that what he actually says is that there are misrepresented facts to argue against affirmative action in the field of cardiology. And then he cites the alternative facts. So my issue is it's a weird phraseology, right? Because facts are true or  typically. We live in a world of First Amendment defamation where it's fact or opinion. Your client says he misrepresented facts. And now we're supposed to say that's an opinion? Because we're already in a dichotomy of fact or opinion. And so when you call out facts and then you don't identify those facts, you just say, hey, here's the alternative scholarship. It would be nice if you said misrepresented facts, this quote meant this, this quote meant that. It doesn't do that. It just says there's alternatives that have three footnotes like four through six that say this is the alternative version. But I'm a little troubled by the misrepresentation of facts because I think we live in this dichotomy of fact opinion. When you start saying, no, this isn't an opinion, I'm telling you these are facts. It may not be where his mind was necessarily, but on a different level. If we continue on through his article, one of the other things he does is he says, okay, these are the benefits of diversity in health care. Here they are. And then he delineates them. Are you also saying that the article because of the way you described it is he says why insights to sources for his difference of different view demonstrates there's no reckless disregard and therefore no malice. I agree with that, your honor. I also point to at page 41 of the appellant's brief, the opening brief, they identify the paragraphs of the complaint that reference actual malice. In particular, they reference paragraphs 38 and 39 on the first amendment complaint. Those paragraphs don't mention Dr. Simon. So from the point of view of allegations of actual malice, it seems to me the district court got that right. And when I'm using the phrase actual malice, I'm not using it in the colloquial way, I'm using it in the definition way. Is that what you're trying to convey to us? Yes, I am. Understood.  Yes, I am. It would sure help to prove there wasn't a misrepresentation  This wasn't reckless. I wasn't just throwing around big incendiary words. I actually meant it. It's a little weird to me because I would have expected there to be fact one that was misrepresented, fact two that was misrepresented, fact three, and then maybe another paragraph that would say, and by the way, this is where the arc of the scholarship goes. I do sort of think he gets there because what he says is the notion that diversity does indeed improve care and outcomes. So he's explaining what it is about the facts that he's relying on that differ from Dr. Wong's  Dr. Wong's conclusion. I get it. I get it.  have a the articles dispute the conclusion. They really, really dispute the conclusion. But you're saying that his method is bogus. And that's what's interesting to me. I'm not sure that we ever actually say his method is bogus. I think what we're saying is he's misrepresented the evidence that's contained at least in the articles that we've cited. And so frankly, one last point that I would make, I think that does go to the point about the back and forth in an academic context. And while I might agree with you, Judge Phipps, that we might have done it better or more          refused any allegations of actual malice. Thank you. Do you have enough of a break? Your Honor, I just have a few points in response. I think my friends of Mr. Schroeder and Mr. Boynton had talked about what was alleged in the Fourth Amendment complaint, asserting essentially that we hadn't raised the other three grounds for retaliation. To the 1983, and they say 1981 claims. That's where they're saying he didn't raise those other grounds. Now, Judge Horan appears to have treated all these grounds as relevant to 1981 and Title VII and PHRA, so you might be fine there. But it does appear that both the complaint and Judge Horan's opinion were, in 1983, were really focused on terminating the moving as a director and barring contact. So I don't see the words on the page.  I would refer to three paragraphs that I know were added to the Fourth Amendment. Okay. Why don't you show me the actual words in the Fourth Amendment? All right. Well, I'm looking at page 391 of the appendix. We're starting with paragraph 49. That's the denigration of plaintiffs on the social media and the Twitter account. Just give everybody a chance because people are flipping through their materials. That's okay. 391, paragraph 49. There's some tweets here. Correct. So the paragraph 49, page 391, talks about their campaign of denigration through their  and their tweets aren't just on the social media. I get that, but this is general background before we get to a count. When we get to the specific count, paragraph 58 specifies two particular actions as to section 1983 in the First Amendment. It specifies removing them from position as director of the fellowship program and precluding them from having contact with medical students. The specific seems to take precedence over the general here. Now, it's only up to the 1983 claim that we have an enumeration of two and only two of these, but you're trying to bring in some of the general background here into the first claim for relief, presumably because it tries to  all the previous allegations, but there's a specific focus in paragraph 58, and the next page we've got paragraph 59, which specifically looks at his academic due process rights being violated by the request for retraction, that's paragraph 51, and then in paragraph 52 we have the campaign of ostracization, so all three of those paragraphs are here. This seems to be like an area where we accord some deference to what the district judge was fairly unnoticed of. When I look at Judge Horan's opinion, as to 1983, she understands there to be two actions she's supposed to be focused on, and her opinion is just about those two, whereas with the other actions, Title VII, 1981, THRA, she looks at the five that you listed in your opening argument. Given that you were the master of the  and this was your fourth chance pleading it, it seems reasonable to take her at her word and approach. It's not like she overlooked something that very clearly and obviously pleaded that as to 1983. In response to that, I would say during the summary judgment hearing, in the papers we filed on summary judgment and in the oral argument that we pointed to these three grounds for retaliation. We tried to be very clear about it in our papers submitted to Judge Horan and in the oral argument presented to Judge Horan that they were part of our claim. I agree that she didn't catch that or didn't address it. But to whatever extent the fourth amendment complaint could have been clear, we were very clear in the summary judgment context in terms of how we briefed it and how it was argued in front of Judge Horan at the hearing.     material facts. That included these three grounds for retaliation. I didn't find a single reference to our facts in her opinion below. You talked about making certain arguments but this 1983 claim didn't survive.  three individual defendants. They didn't survive.  1983 claim didn't survive. If that's true,  added to the summary judgment would not have been edifying the 1983 claim.  1983 claim did survive. That was addressed on summary judgment. What didn't survive was the claims that were dismissed earlier. Those three corporate parties were gone. I understand correctly.  understand. I just want to see if my colleagues have anything further. Counsel, we are all set here. What we're going to ask counsel to do and thank you for your patience and I know there are a lot of questions     take the matter of revising it with our thanks for your hard work in this matter.